UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| AARON B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING COMMISSIONER'S DECISION** <br><br><br> Case No. 2:21-cv-00170 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Aaron B.[1] filed this action asking the court to reverse and remand the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34.  (*See* Pl.'s Opening Br. ("Opening Br."), Doc. No. 18.)  The Administrative Law Judge ("ALJ") determined Mr. B. did not qualify as disabled.  (Certified Tr. of Admin. R. ("Tr.") 12–23, Doc. No. 16.)  Mr. B. argues the ALJ erred by engaging in undisclosed and unauthorized psychological testing of Mr. B's memory during the administrative hearing—and, accordingly, the ALJ's credibility determination and residual functional capacity findings are unsupported by substantial evidence.  (Opening Br. 5, Doc. No. 16.)  The court[2] has carefully reviewed the

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by his first name and last initial only.

[2] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (*See* Doc. No. 10.)

1

record and the parties' briefs.³  Where the ALJ did not engage in unauthorized testing and his findings are supported by substantial evidence, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner.  This court reviews the ALJ's decision and the whole record to determine if substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards.  42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).  The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).  Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."  *Id.* at 1154 (internal quotation marks omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation marks omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

---

³ The appeal will be determined on the written memoranda as oral argument is unnecessary. DUCivR 7-1(g).

2

APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). An individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The ALJ employs a five-step sequential evaluation in making this disability determination, considering whether:

1) The claimant is engaged in substantial gainful activity;

2) The claimant has a severe medically determinable physical or mental impairment;

3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation, which preclude substantial gainful activity;

4) The claimant has a residual functional capacity to perform past relevant work; and

5) The claimant has a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden, in the first four steps, of establishing the disability. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

PROCEDURAL HISTORY

Mr. B. applied for disability insurance benefits on March 20, 2019, alleging disability beginning November 18, 2017. (Tr. 173.) After a telephonic administrative hearing on September 8, 2020, (*id.* at 29–67), the ALJ issued a decision on September 25, 2020, finding Mr. B. not disabled and denying benefits, (*id.* at 12–23).

At step two of the sequential evaluation, the ALJ determined Mr. B. had the severe impairments of premature ventricular contractions with a history of tachycardia and bicuspid valve replacement, chronic obstructive pulmonary disease, degenerative disc disease of the cervical spine, borderline intellectual functioning, major depressive disorder, generalized anxiety disorder, and attention-deficit hyperactivity disorder. (*Id.* at 14.) The ALJ also determined Mr. B. had a non-severe impairment of lumbar degeneration. (*Id.* at 15.) At step three, the ALJ found Mr. B.'s impairments did not meet or equal the severity of an impairment listing. (*Id.*) Between steps three and four, the ALJ determined Mr. B. had the residual functional capacity ("RFC")[4] to perform light work with the following limitations:

> [H]e can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders or scaffolds; can have no concentrated exposures to airborne irritants and no exposure to hazards; can make simple work-related judgments and decisions; understand, remember and carry out short and simple instructions; have occasional changes in a routine work setting; and can have occasional contact with the public, coworkers, and supervisors.

(*Id.* at 17.) With this RFC, the ALJ found Mr. B. unable to perform any of his past, relevant work. (*Id.* at 21.) However, the ALJ concluded jobs existed in significant numbers in the national economy which Mr. B. could perform. (*Id.* at 21–22.) The Appeals Council denied Mr.

---

[4] An individual's RFC is the most the individual can do considering his/her/their limitations. 20 C.F.R. §§ 404.1545(a)(1).

4

B.'s request for review, (*id.* at 1), making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Mr. B. makes a single claim of error. He argues the ALJ erred as a matter of law by engaging in undisclosed and unauthorized memory testing of Mr. B. during the administrative hearing. (Opening Br. 5, Doc. No. 18.) As a result, Mr. B. contends the ALJ's credibility determination and RFC findings are unsupported by substantial evidence. (*Id.*)

Mr. B.'s claim of error revolves around three questions the ALJ asked Mr. B. at the beginning of the administrative hearing. Specifically, the ALJ asked Mr. B. to identify himself by stating his full name, date of birth, and social security number—all of which Mr. B. did. (Tr. 31.) The hearing continued, and Mr. B. testified that, among other symptoms, he has significant problems with his short-term memory. (*Id.* at 50, 59; *see also id.* at 18.) When determining the RFC, the ALJ found Mr. B.'s medically determinable impairments could reasonably be expected to cause his claimed symptoms. (*Id.* at 18.) But he found Mr. B.'s statements regarding the intensity, persistence, and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 18–19.) Specifically, the ALJ noted:

> The claimant's reports of symptoms are generally consistent with the objective medical evidence, though there has been some variation in symptoms, and symptom severity, over time. The claimant testified his memory is awful, and this is supported by standardized testing, *but he did follow [the] three-step instruction for identifying himself at the beginning of the hearing very precisely*. It is possible, therefore, that attention issue[s] affected his test scores, as the evaluator noted at that time.

(*Id.* at 19 (emphasis added).)

In this statement, the ALJ refers to the test scores and notes of Kristina Talbert, Psy.D., who completed a psychological evaluation on Mr. B. on October 16, 2017. (*See id.* at 1080–92;

5

*see also* Opening Br. 7, Doc. No. 18.) In her clinical observations, Dr. Talbert opined that because of Mr. B.'s anxiety, his test results underestimated his true intellectual potential. (*Id.* at 1086.) However, she also found that due to his "high degree of daily anxiety, the results appear to represent how [Mr. B.] likely functions in challenging settings and highlights the interconnection between ADHD symptoms and anxiety which lead to more impairment due to their cumulative effects." (*Id.*) She further noted the test results "highlight[ed] the impacts of his mental health symptoms, such as anxiety and inattention, which results in difficulty with working memory and processing speed." (*Id.*) Dr. Talbert concluded the scores suggested Mr. B.'s working memory was a "significant difficulty," indicating "a considerable weakness" in that area. (*Id.* at 1087.)

Mr. B. argues the ALJ engaged in impermissible psychological testing by using the three-step instruction to assess Mr. B.'s memory. (Opening Br. 7–8, Doc. No. 18.) Mr. B. claims that because the ALJ is not a psychologist and his three-step instructions have not been tested for validity, they have unknown significance. (*Id.*) According to Mr. B., these instructions are analogous to "sit and squirm" testing—an approach which has been rejected. (*Id.* at 8.) Citing *C.S.A. v. Saul*, No. 18-2634, 2019 U.S. Dist. LEXIS 103819, at *1 (D. Kan. June 20, 2019) (unpublished), Mr. B. explains this rejected "sit and squirm" approach usually refers to the scenario where an ALJ uses the observation of a claimant sitting through the administrative hearing to find the claimant is less limited than claimed. (*Id.*)

In *C.S.A.*, the court found the ALJ "improperly concluded that [the claimant's] comportment at the hearing showed her back pain was not as severe as she claimed." 2019 U.S. Dist. LEXIS 103819, at *16. While an ALJ "is entitled to consider a claimant's demeanor," he cannot "substitute his opinion for a medical opinion," or "create his own criteria for measuring

6

pain." *Id.* (internal quotation marks omitted). Criticizing the ALJ's conclusion that the claimant's pain "was not disabling in part because she did not squirm in her chair or appear uncomfortable while sitting," the court noted an ALJ "is not trained to evaluate pain in this manner" and the ALJ did not cite to any medical evidence to support this analysis. *Id.* at *16–17. The court remanded the case, finding the ALJ relied upon "a series of unsupported, improper, or irrelevant factors in concluding" the claimant was not fully persuasive and in evaluating the RFC. *Id.*

Mr. B. contends the ALJ used the same impermissible approach here. (Opening Br. 8–9, Doc. No. 18.) That is, he claims the ALJ discounted his statements regarding the intensity, persistence, and limiting effects of his memory issues because he was able to recite his name, birthdate, and social security number. (*Id.* at 8.) Mr. B. argues remand is required where the ALJ is not trained to evaluate memory and did not cite any medical evidence supporting the idea that the ability to identify oneself indicates a claimant's memory status or ability to work. (*Id.* at 8–9.)

The Commissioner disagrees with Mr. B.'s characterization of the hearing. (*See* Answer Br. 1–2, Doc. No. 21.) According to the Commissioner, the ALJ did not engage in his own testing. Instead, the ALJ found Dr. Talbert's medical opinions consistent with and supportive of the abilities Mr. B. exhibited at the hearing, as observed by the ALJ. (*Id.* at 6–8.) The ALJ found Dr. Talbert's medical opinion relatively persuasive and relied on it when assessing the RFC.[5] (*Id.* at 8–9; Tr. 21.) The Commissioner argues that while an ALJ cannot rely solely on

---

[5] The ALJ found Dr. Talbert's opinion that Mr. B. "is currently unable to work because of his severe psychiatric symptoms, has limitations in his ability to learn and perform job-related tasks, and has poor working memory, difficulty communicating with others, and concentration problems," partly persuasive because a claimant's ability to work is an issue reserved for the

7

his personal observations to discredit a claimant's allegations, he may consider them in evaluating a claimant's subjective symptom statements. (Answer Br. 9, Doc. No. 21.) Citing 20 C.F.R. § 404.1529(c)(4), the Commissioner contends an ALJ must consider whether a claimant's statements are consistent with the ALJ's observations.[6] (*Id.*) According to the Commissioner, the ALJ did just that, considering his personal observations as one of several factors in evaluating Mr. B.'s subjective symptoms. (*Id.* at 10.) Finally, the Commissioner argues any error is harmless because the ALJ's conclusions are supported on other grounds. (*Id.* at 11.)

An ALJ uses an improper "sit and squirm" approach by "subjectively arriv[ing] at an index of traits which he expects the claimant to manifest at the hearing" then denying the claim when, in the ALJ's opinion, the traits are not exhibited. *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984) (internal quotation marks omitted); *see also Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985) ("[A]n ALJ must not impose his observations in lieu of a consideration of the medical evidence presented," but that does not "prohibit an ALJ from considering the claimant's appearance and demeanor during the hearing."); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) (discussing the "thoroughly discredited 'sit and squirm' test," and noting "the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation"); *cf. Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("Although an ALJ may not rely solely on his personal observations to discredit a plaintiff's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility.").

---

Commissioner. (Tr. 21.) The ALJ found the remainder of Dr. Talbert's opinion relatively persuasive because it was supported by testing and consistent with the record as a whole. (*Id.*)

[6] The Commissioner appears to have erroneously cited 20 C.F.R. § 404.1529(c)(4), where it is § 404.1529(c)(3) which supports this proposition. *See* § 404.1529(c)(3) (noting that when evaluating the intensity, persistence, and limiting effects of symptoms, the ALJ considers "all evidence" including "observations by [Commissioner] employees and other persons").

8

Because the sit-and-squirm approach results in unreliable conclusions, it justifies remand. *See Wilson*, 734 F.2d at 517.

In this case, the ALJ did not use an improper sit-and-squirm approach.[7] Significantly, the record does not show the ALJ used his own observations to discredit Mr. B's claim of memory problems, or as a basis for denying Mr. B.'s claim. Rather, he acknowledged Mr. B's testimony that "his memory is awful."[8] (*See* Tr. 19.) The ALJ concluded this subjective claim was supported by standardized testing before observing Mr. B. followed the three-step instruction to identify himself. (*Id.*) The ALJ then noted, "[i]t is possible . . . that attention issue[s] affected [Mr. B.'s] test scores, as the evaluator noted at that time." (*Id.* (referring to Dr. Talbert's notes).) As is apparent from this summary, the ALJ did not use his own observations to contradict other evidence in the record, nor did he rely on his observations in lieu of medical evidence. Instead, he found his observations to be consistent with the medical evidence.

As noted, the ALJ linked Mr. B.'s ability to follow instructions to Dr. Talbert's observations about Mr. B.'s test scores. In doing so, the ALJ suggested only that Mr. B.'s ability to follow his instructions supported Dr. Talbert's opinion that Mr. B.'s test scores may be impacted by his attention issues. (*See id.*) The ALJ did not use his observations to reject Dr. Talbert's opinion or Mr. B.'s test scores—or to modify the RFC assessment. Indeed, the ALJ

---

[7] Although sit-and-squirm jurisprudence generally applies to subjective claims of pain, it can also apply to claims of other subjective symptoms. *See, e.g.*, *Caldwell v. Sullivan*, 736 F. Supp. 1076, 1082 (D. Kan. 1990) (discussing sit-and-squirm approach in relation to claims of memory and concentration problems).

[8] In full, the ALJ notes: "The claimant's reports of symptoms are generally consistent with the objective medical evidence, though there has been some variation in symptoms, and symptom severity, over time. The claimant testified his memory is awful, and this is supported by standardized testing, but he did follow [the] three-step instruction for identifying himself at the beginning of the hearing very precisely. It is possible, therefore, that attention issue[s] affected his test scores, as the evaluator noted at that time." (Tr. 19.)

noted that while the "standardized test scores may have been affected by comorbid impairments, such as ADHD," those "comorbid conditions would result in similar functional restrictions, consistent with" the ALJ's RFC findings. (Tr. 21.) In other words, the ALJ did not give less weight to the test scores (even if they were impacted by attention issues) because the limitations resulting from comorbid conditions were similar either way. There is no indication the ALJ's observation meaningfully impacted his analysis or the resulting RFC.

Even if the ALJ's questioning could be considered erroneous, any error is harmless. Where an ALJ improperly relies on one factor, but supports his analysis of the intensity, persistence, and limiting effects of the claimant's symptoms with other reasons—and his findings are supported by substantial evidence—the error is harmless. *See Rafferty v. Berryhill*, No. 2:15-cv-00768, 2017 U.S. Dist. LEXIS 46582, *9 n.3 (D. Utah Mar. 28, 2017) (unpublished) (finding erroneous reason for discounting the claimant's testimony to be harmless error where the ALJ provided other, valid reasons, also); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding an ALJ's reliance on invalid reasons to discredit the claimant's testimony constituted harmless error where the ALJ also relied on valid reasons). Even if the ALJ had used Mr. B.'s ability to identify himself to find Mr. B.'s claims as to the intensity, persistence, and limiting effects of his bad memory to be inconsistent with the medical evidence, it was only one of several factors. The ALJ also considered the fact that Mr. B.'s treatment had been conservative.[9] (Tr. 19.) And he relied on Mr. B.'s independence—and his activities of daily living,[10] such as visiting with family members, mushing dogs, attending dog

---

[9] *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), (v) (noting medication as well as other treatment to alleviate symptoms are relevant factors to consider when evaluating symptoms).

[10] *See* 20 C.F.R. § 404.1529(c)(3)(i) (noting daily activities are relevant factors to consider when evaluating symptoms).

races, and riding a scooter.[11] (*Id.* (citing Tr. 286–99, 443, 1156, 1211); *see also* Tr. 444, 461.)

This is not a case like *C.S.A.*, where the ALJ relied on a series of "unsupported or irrelevant factors in assessing [the claimant's] persuasiveness about the level of pain she experienced." 2019 U.S. Dist. LEXIS 103819, at *17. In *C.S.A.*, this "formed a significant part of the ALJ's assessment of [the claimant's] subjective complaints of pain and her resulting limitations." *Id.* In contrast, here, the ALJ's analysis is supported by several other factors. And his observations were not a significant part of his assessment of Mr. B.'s subjective statements about his memory. Therefore, even if the ALJ erred in considering his own observation, the error is harmless. The remaining factors constitute substantial evidence supporting the ALJ's decision. Accordingly, the Commissioner's decision is affirmed.

## CONCLUSION

Where the ALJ did not use a sit-and-squirm approach, his decision is not contrary to legal standards and it is otherwise supported by substantial evidence. The court AFFIRMS the Commissioner's decision.

DATED this 9th day of September, 2022.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[11] The Commissioner notes the ALJ cites to several other factors, including objective diagnostic findings and imaging and successful control of symptoms with medication. (Answer Br. 10, Doc. No. 21 (citing Tr. 20).) But these factors pertain only to Mr. B.'s physical limitations, not his mental limitations and symptoms. (*See* Tr. 20.)